# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| DEBRA H. DUNN, | ) Civil Action No.: 2:23-cv-237-DCN-MGB |
| | ) |
| Plaintiff, | ) **COMPLAINT** |
| | ) **Violation of the ADEA:** |
| vs. | ) **Discrimination Based Upon Age;** |
| | ) **Violation of Title VII:** |
| ALLIED CRAWFORD (CHARLESTON), INC. | ) **Discrimination Based Upon Gender;** |
| d/b/a ALLIED CRAWFORD STEEL, | ) **Breach of Contract; Breach of Contract** |
| | ) **Accompanied by a Fraudulent Act;** |
| Defendant. | ) **Promissory Estoppel** |
| | ) **JURY TRIAL DEMANDED** |

The plaintiff, complaining of the acts of the defendant, alleges as follows:

## PARTIES AND JURISDICTION

1. That the plaintiff is a resident and citizen of the County of Dorchester, State of South Carolina.

2. That, upon information and belief, the defendant Allied Crawford (Charleston), Inc. d/b/a Allied Crawford Steel ("defendant" or "Allied") is a South Carolina corporation maintaining offices and agents and otherwise doing business in the County of Charleston, State of South Carolina.

3. That this court has federal question jurisdiction pursuant to 29 U.S.C. § 623, et seq. (the Age Discrimination in Employment Act ("ADEA")); 42 U.S.C. § 2000e-2 and 42 U.S.C. § 2000e-5 ("Title VII"); and 28 U.S.C. § 1331.

4. That venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division, as defendant does business and plaintiff resides in this district, and a substantial part of the events giving rise to plaintiff's claims occurred here.

1

**CONDITIONS PRECEDENT**

5. That plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below. Moreover, defendant employed over fifteen (15) and over twenty (20) or more employees at all relevant times as defined and required by Title VII and the ADEA respectively; thus, defendant is an employer as defined by those Acts and is otherwise subject to and covered by said Acts.

6. That on or about December 2, 2020, and as a result of defendant's discriminatory conduct, all of which is more fully described below, plaintiff (who had not yet retained counsel) timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon age under the ADEA, all with the counseling and advice of the EEOC. In or around April of 2021, plaintiff retained present counsel. Shortly thereafter, the EEOC found that cause existed to find that defendant discriminated against plaintiff due to her age and conciliation efforts began. Throughout the process, plaintiff's counsel urged the EEOC investigator to allow plaintiff to add a second Charge for gender discrimination, which the EEOC refused to do while discouraging plaintiff from doing so. On or about July 20, 2022, formal conciliation efforts took place with the EEOC, but failed. On or about August 3, 2022, plaintiff amended her Charge with the EEOC to include a claim for gender discrimination.

7. That on or about November 4, 2022, the EEOC issued and plaintiff received two (2) separate Notices of Right to Sue (one for each claim.) The Right to Sue in regard to plaintiff's age claim stated that reasonable cause existed to find plaintiff was discriminated

against due to her age, but that conciliation efforts failed, and the Right to Sue regarding plaintiff's gender claim was dismissed, erroneously stating that the Charge was untimely filed.

8. That plaintiff has timely filed the foregoing action within ninety (90) days of the date on which she received both of the Notices of Right to Sue described above in Paragraph 7.

## FACTUAL ALLEGATIONS

9. That plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 8 hereinabove as fully as if set forth verbatim.

10. That plaintiff is a female who was at least sixty-five (65) years of age at the time of the discriminatory acts alleged herein.

11. The defendant hired plaintiff on or about July 8, 2019 as a sales representative to work at its facility in North Charleston, South Carolina, selling steel. Specifically, plaintiff was hired by Katsra Nelson ("Nelson"), the Sales Manager of the facility.

12. That during the majority of plaintiff's employment with defendant there were three (3) sales representatives, including the plaintiff – a male, Mark Foxworth ("Foxworth") who, upon information and belief is in his fifties, and Nelson, a female and who, upon information and belief is in her thirties. While Nelson performed sales duties for the defendant, she also served as the Sales Manager of the facility. As such, plaintiff and Foxworth both reported directly to Nelson. For her part, Nelson reported to the General Manager of the facility, Geoff Marshall ("Marshall"), who is male and who, upon information and belief, was about forty-five (45) years of age at all pertinent times. Finally, Marshall reported to the owner of the company, Gary Stern ("Stern"). The facility also employed male truck drivers who would

transport the steel after a sale was consummated. At least two (2) of the said male truck drivers were over the age of sixty-five (65) in 2020.

13. That during her employment with defendant, plaintiff performed her job duties in a satisfactory fashion and otherwise maintained an excellent employment record there. While plaintiff never received formal written performance evaluations at defendant, she was never disciplined there; her supervisors and managers complimented her on her job performance; and plaintiff routinely met her sales goals.

14. That in or around January of 2020 the COVID crisis was beginning to take hold in the area. Nevertheless, plaintiff was in excellent shape and in good health for her age and was not overly concerned about it. Plaintiff could certainly still perform the duties of her job, despite the crisis.

15. That in or around February of 2020 plaintiff observed that defendant hired a young woman in her thirties, Molly (last name unknown) ("Molly") to work as a sales representative at the facility and that Nelson was training the new hire. With the new hire, defendant would have four (4) sales representatives at its North Charleston facility.

16. That on or about March 18, 2020, plaintiff was called into a meeting with the General Manager, Marshall, and the Sales Manager, Nelson, and told that the owner of the company, Stern, had instituted a companywide mandate, effective immediately, that any employee of defendant 65 years of age or older was to be immediately sent home and placed on leave as a precaution due to the COVID pandemic. Accordingly, defendant sent plaintiff home that very day.

17. That in sending plaintiff home that day, Marshall and Nelson assured plaintiff, in strong and mandatory terms, that when it was "safe" the defendant would call her

4

back to work. Otherwise, neither Marshall nor Nelson said anything to plaintiff during the said meeting about whether or how plaintiff would be paid while out on forced COVID leave. As it turned out, defendant only paid plaintiff for the first two (2) weeks she was out on said leave.

18. That at or around the same time, defendant also placed two (2) of its male truck drivers who were also over the age of 65 on leave and sent them home on or about that same day. However, unbeknownst to plaintiff, the male truck drivers were paid in full during the entire time they were out of work – unlike plaintiff.

19. That on or about March 26, 2020, while plaintiff was out on her forced and unnecessary COVID leave and had not yet been called back to work, Nelson sent plaintiff a text message stating in part that, "…we are still here working Lol Believe they are making a decision company wide tomorrow in regards to what we will be doing going forward. Geoff or I will keep you posted. Take care." Upon information and belief, on or about March 25 or 26, 2020 defendant deemed it safe for its older employees to return back to work. Yet thereafter defendant did not call plaintiff back to work.

20. That on or about April 6, 2020, while plaintiff still had not been called back to work, and just as her two (2) weeks of pay came to an end, defendant called her into the office and had plaintiff fill out paperwork related to filing a claim for unemployment benefits. Though surprised by defendant's directive, plaintiff did as instructed and filled out the paperwork.

21. That on or about May 5, 2020, having still not been called back to work, plaintiff sent a text message to Marshall asking, "Do you have any information when I can come back?" In response, Marshall sent a text message to plaintiff that same day stating, "No sorry have not heard anything yet, when I hear of something, I will be reaching out to you."

22. That still that same day (on or about May 5, 2020) plaintiff replied to Marshall's text via another text message, this time stating, "I'm curious as to what Gary has to say about all of the workers in limbo." In an attempt to further explain her previous text, plaintiff sent yet another text message to Marshall that day stating, "Since Gary sent workers over the age of 65 home, I'm curious as to what he has said about the situation."

23. That still on or about May 5, 2020, Marshall replied to plaintiff's two (2) text messages described above by stating via a reply text message, "***It was done as a precaution way*** and we haven't had any kind of an update when I hear more I will let you know." (emphasis supplied).

24. That contrary to Nelson and Marshall's repeated assurances that they would keep plaintiff updated and that they would call her back to work when it was safe, they never kept either promise. Not only did defendant refuse to call plaintiff back to work after it deemed the work environment safe, but no one from the defendant ever contacted plaintiff again about returning to work. This, despite the fact that the male truck drivers who had been sent home with full pay had already been called back to work.

25. That on or about August 3, 2020, and having heard nothing from the defendant about returning to work, plaintiff filed a Charge of age discrimination with the EEOC.

26. That in the course of the EEOC proceedings, the defendant sent the EEOC a letter wherein the defendant stated, in pertinent part, that it determined it "could no longer support four sales people" and that plaintiff was "terminated based on performance. The role has not been filled." Of course, defendant never advised plaintiff of the above, and any allegation of poor performance or that plaintiff was selected for layoff because she was the least capable of the four (4) sales representatives, is totally false.

27. That in the same letter, the defendant admitted that the male truck drivers "over the age of 65…were permitted to stay home with full pay..." and that they have both been "returned to work with full pay."

28. That thus, unlike her male coworkers, plaintiff was not paid in full during her forced leave and she was never called back to work.

**FOR A FIRST CAUSE OF ACTION:**
**VIOLATION OF THE ADEA**
**DISCRIMINATION BASED ON AGE**
**(BASED ON AGE)**
**(Forced leave; failure to call back to work;**
**layoff and/or termination)**

29. That plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 28 hereinabove as fully as if set forth verbatim.

30. That defendant is a "person" within the meaning of the ADEA, 29 U.S.C. § 630(a).

31. That defendant is in an industry that affects commerce and defendant employed twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar years and, thus, defendant is an employer as defined by the ADEA, 29 U.S.C. § 630(b).

32. That plaintiff was born in 1952 and was thus well over forty (40) years of age at the time of defendant's discriminatory conduct against her, all as alleged above.

33. That at all times during plaintiff's employment at defendant, plaintiff performed her job duties in a manner that met defendant's legitimate performance expectations, as she was never disciplined at defendant, always met her sales goals, and management complimented her on her job performance.

7

34. That despite the above, plaintiff suffered adverse employment actions at the defendant, namely, she was unnecessarily forced to go out on "COVID" leave without pay, she was never called back to work, and she was ultimately laid off and/or fired by defendant, without warning, notice or cause, and for false reasons or reasons unworthy of credence.

35. That shortly before forcing plaintiff to go out on unpaid leave, defendant hired a young female employee, half the plaintiff's age, to perform the duties of plaintiff's job and to replace her; and, indeed, after plaintiff went out on forced, unpaid leave, said substantially younger employee did in fact perform plaintiff's job duties and replaced plaintiff.

36. That defendant's conduct and its adverse actions as described above were undertaken in such a manner that they give rise to an inference of discrimination as well as prove pretext. Said conduct includes, but are not limited to, the following:

   a) Defendant hired a substantially younger employee as a sales representative shortly before it forced plaintiff to go out on unnecessary COVID leave, and later defendant assigned the duties of plaintiff's job to that person;

   b) Defendant's COVID leave policy is discriminatory on its face as it was not necessary and only applied to employees at the defendant who were 65 years of age of older. Moreover, plaintiff was healthy and in good shape and it was not necessary for her to be forced out on leave;

   c) In forcing plaintiff to go out on COVID leave, defendant falsely represented to plaintiff that it would bring her back as soon as it was safe, yet it intentionally never brought her back to work and never intended to do so;

   d) Defendant ultimately fired and/or laid plaintiff off while plaintiff was out on leave without telling even plaintiff that she had been laid off or fired; and

   e) The reasons ultimately given to plaintiff for her layoff or firing are false and/or unworthy of credence, as plaintiff never had performance issues and, to the extent defendant asserts it used performance as a criteria to select plaintiff for layoff, that too is

8

false, as plaintiff performed her job at defendant as well as, and even better than, the other sales representatives there, and far better than the young woman defendant had recently hired as a sales representative.

37. That as such, defendant intentionally took the adverse actions described above against plaintiff, all on account of plaintiff's age and, by doing so, has violated the ADEA.

38. That as a result of the actions of the defendant, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, economic injury, and plaintiff further seeks damages in the form of attorney's fees and costs and prejudgment interest, all as authorized by the ADEA.

39. That defendant's actions as described above were undertaken intentionally, willfully, wantonly, knowingly and with reckless indifference to plaintiff's federally protected rights and, therefore, plaintiff is entitled to recover liquidated damages from the defendant.

**FOR A SECOND CAUSE OF ACTION:**
**VIOLATION OF TITLE VII**
**DISCRIMINATION BASED ON GENDER**
**(Failure to call back to work; failure to pay**
**plaintiff on leave; layoff and/or termination)**

40. That plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 39 hereinabove as fully as if set forth verbatim.

41. That at all pertinent times as defined by Title VII, defendant employed fifteen (15) or more employees and, as such, defendant is an "employer" as defined by Title VII, and otherwise subject to that Act.

42. That plaintiff is female.

43. That as alleged above, at the time defendant took adverse action against plaintiff, and at all times prior thereto, plaintiff performed her job duties at defendant in a manner that met defendant's reasonable and legitimate expectations.

9

44. That despite the above, plaintiff suffered adverse employment actions at the defendant, namely, she unnecessarily was forced to go out on "COVID" leave without pay; she was never called back to work; and she was ultimately fired and/or laid off by defendant, without warning, notice or cause, and for false reasons or reasons unworthy of credence.

45. That after forcing plaintiff to go out on unpaid COVID leave, refusing to call her back to work, and then firing and/or laying her off, defendant replaced plaintiff with person(s) outside of plaintiff's protected class and/or defendant assigned person(s) from outside plaintiff's protected class to perform plaintiff's job duties; and/or defendant left plaintiff's job open. Moreover, defendant refused to call plaintiff back to work, contrary to its repeated assurances that it would do so when "it was safe;" defendant fired and/or laid plaintiff off without even telling plaintiff; the reasons given for plaintiff's termination and/or layoff are false and/or unworthy of credence, as plaintiff did not have performance issues and, to the extent defendant asserts it used performance as a criteria to lay plaintiff off, that too is false, as plaintiff performed her job duties better and more competently than the other sales representatives. And, when defendant laid off two (2) other male employees over the age of 65, defendant paid the male employees their full pay for the entire duration of their COVID leave and then ultimately called said male employees back to work, while only paying plaintiff (the female) for two (2) weeks of her leave and never calling her back to work.

46. That as such, the conduct set forth above gives rise to an inference of gender discrimination and proves pretext.

47. That as such, defendant has discriminated against the plaintiff, all on account of her gender, thereby violating Title VII.

10

48. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

49. That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff, and therefore plaintiff is entitled to recover punitive damages from the defendant.

### FOR A THIRD CAUSE OF ACTION:
### BREACH OF CONTRACT

50. That plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 49 hereinabove as fully as if set forth verbatim.

51. That plaintiff and defendant entered into an enforceable contract of employment whereby plaintiff agreed to work for defendant and to go out on forced COVID leave and, in return, defendant agreed, in strong and mandatory terms, that it would call plaintiff back to work when it was "safe."

52. That plaintiff went out on leave as instructed by defendant and, thus, complied with the obligations and conditions imposed upon her by the parties' employment contract.

53. That defendant breached the said employment contract by failing and refusing to call plaintiff back to work after it deemed the working environment "safe" and by

terminating or laying plaintiff off without telling her and for false reasons and/or reasons unworthy of credence.

54. That as a direct result of defendant's breaches as set forth above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, economic injury, prejudgment interest, and further seeks such other relief as the court deems just and proper.

## FOR A FOURTH CAUSE OF ACTION:
## BREACH OF CONTRACT
## ACCOMPANIED BY A FRAUDULENT ACT

55. That plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 54 hereinabove as fully as if set forth verbatim.

56. That as alleged above, the parties entered into a contract of employment which was breached by the defendant.

57. That defendant breached the said contract with fraudulent intent, as it did not want an older female working at its facility.

58. That defendant's breach was accompanied by fraudulent acts, as defendant failed and refused to even tell plaintiff she had been laid off or fired and the reasons defendant gave to plaintiff for her layoff or termination were false and/or unworthy of credence.

59. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

60. That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the protected rights of the plaintiff, and therefore plaintiff is entitled to recover punitive damages from the defendant.

## FOR A FIFTH CAUSE OF ACTION: PROMISSORY ESTOPPEL

61. That plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 60 hereinabove as fully as if set forth verbatim.

62. That defendant promised and assured plaintiff, in clear, strong and unambiguous terms, that it would call her back to work when the work environment became "safe."

63. That plaintiff reasonably relied upon said promises to her detriment by not applying for other employment while out on forced COVID leave waiting to be called back to work by defendant as promised.

64. That the work environment became safe (as it always had been), yet defendant breached its promise to plaintiff by failing and refusing to call plaintiff back to work.

65. That as a result of the actions of the defendant, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, economic injury, prejudgment interest, and further seeks such other relief as the court deems just and proper.

WHEREFORE, plaintiff prays for judgment against the defendant as follows:

(a) As to plaintiff's First, Third and Fifth Causes of Action, for such an amount of actual and special damages as the trier of fact may find, including damages for lost back and future wages, income and benefits, economic injury, as well as expenses associated with finding

other work, prejudgment interest, the costs and disbursements of this action, and for such other and further relief as the court deems just and proper. (Moreover, with respect to plaintiff's claims under the ADEA, plaintiff seeks liquidated damages and her reasonable attorney's fees and costs);

    (b) As to plaintiff's Second and Fourth Causes of Action, for such amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the costs and disbursements of this action, including reasonable attorney's fees (as to plaintiff's claims for gender discrimination under Title VII), prejudgment interest and for such other and further relief as the court deems just and proper.

             HITCHCOCK & POTTS

             By: *A. Christopher Potts*
             A. Christopher Potts
             Federal ID No.: 5517
             222 West Coleman Blvd., Suite 124 #11
             Mt. Pleasant, SC 29464
             Telephone: (843) 577-5000
             Email: hitchp@bellsouth.net
             ***Attorneys for the Plaintiff***

Charleston, South Carolina
January 18, 2023